**Lori Chavez-DeRemer**,
Secretary of Labor,
United States Department of Labor,
    *Plaintiff*,

   v.

**Amigos Del Pueblo Inc.**,
**Amigos Del Pueblo Dos, Inc.**,
**Amigos Del Pueblo Tres, Inc.**,
**Amigos Del Pueblo Cuatro, Inc.**,
**Juan Francisco Audelo**, Individually and as
an Officer, and **Roberto Audelo**, Individually
and as an Officer,
    *Defendants*.

**Complaint**

Civil Action No. 25-1424

1.  Plaintiff, **Lori Chavez-DeRemer**, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) ("the Act" or "the FLSA"), because Defendants violated Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act; to recover back wages and liquidated damages due for the period from August 2021 through at least October 2024 ("the relevant time period"); to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

2.  The Secretary seeks back wages and liquidated damages for several dozen kitchen and front-of-house workers employed by Defendants at four restaurants in the Buffalo area. The Secretary also seeks to enjoin Defendants from their unlawful conduct and to restrain Defendants from withholding unpaid wages from their employees.

3.     The Defendants are the four companies that employed the restaurants' workers, and the two individual corporate owners who oversaw the day-to-day labor performed by these employees.

4.     In blatant violation of the Act, Defendants deprived their employees of their rightfully owed wages in several ways. Despite tracking many servers' and bartenders' hours each day with an electronic timekeeping system, Defendants often falsely reported to their payroll vendor that these employees had worked far fewer hours, to avoid paying many employees the required overtime premiums. In other instances, Defendants manipulated servers and bartenders' hourly rates to avoid paying the full required overtime premiums. The Defendants also regularly directed their kitchen employees to work 55 to 60 hours per week, but denied these employees overtime pay, instead paying flat weekly salaries or day rates, without any overtime premiums. At times, Defendants missed payroll entirely, leaving some employees with no pay for long hours. Even after the U.S. Department of Labor's Wage and Hour Division put Defendants on notice that many of their pay practices violated the Act, Defendants persisted for months in paying many kitchen employees flat salaries, without any overtime premiums. Defendants have also attempted to conceal their violations of the Act by keeping incomplete records, such as failing to track kitchen employees' extensive overtime hours.

<b>JURISDICTION AND VENUE</b>

5.     This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

6.     Venue of this action lies in the United States District Court for the Western District of New York because a substantial part of the events or omissions giving rise to the claims occurred in this District, specifically in Erie County. 28 U.S.C. § 1391(b)(2).

# FACTUAL ALLEGATIONS

## THE PARTIES

### *Plaintiff*

7.      Plaintiff Lori Chavez-DeRemer, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages.

### *The Andale Corporate Defendants*

8.      At all relevant times, Amigos Del Pueblo Inc., Amigos Del Pueblo Dos, Inc., Amigos Del Pueblo Tres, Inc., and Amigos Del Pueblo Cuatro, Inc. (collectively, the "Andale Corporate Defendants"), have each employed the kitchen and front-of-house workers that worked respectively at each of four restaurants in East Amherst, Depew, Williamsville, and Buffalo, New York.

9.      Defendant **Amigos Del Pueblo Inc.** is a company organized under the laws of the State of New York, having its principal office at 4455 Transit Road, Suite 2B, Buffalo, New York 14221.

10.     Since 2019, Amigos Del Pueblo Inc. has been engaged in the operation of a full-service restaurant known as Andale Lounge, located at 9430 Transit Road, East Amherst, New York.

11.     Defendant Amigos Del Pueblo Inc., at all relevant times, has regulated the employment of all persons employed by it, including but not limited to kitchen and front-of-house workers at Andale Lounge, and has acted directly and indirectly in the company's interest in relation to the employees. Amigos Del Pueblo Inc. is an employer of its employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12.     Defendant **Amigos Del Pueblo Dos, Inc.** is a company organized under the laws of the State of New York, having its principal office at 4455 Transit Road, Suite 2B, Buffalo, New York 14221.

13.     Since 2021, Defendant Amigos Del Pueblo Dos, Inc. has been engaged in the operation of a full-service restaurant known as Andale II Mexican Restaurant ("Andale II"), located at 1402 French Road, Depew, New York.

14.     Defendant Amigos Del Pueblo Dos, Inc., at all relevant times, has regulated the employment of all persons employed by it, including but not limited to kitchen and front-of-house workers at Andale II, and has acted directly and indirectly in the company's interest in relation to the employees. Amigos Del Pueblo Dos, Inc. is an employer of its employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15.     Defendant **Amigos Del Pueblo Tres, Inc.** is a company organized under the laws of the State of New York, having its principal office at 4455 Transit Road, Suite 2B, Buffalo, New York 14221.

16.     Since 2022, Defendant Amigos Del Pueblo Tres, Inc. has been engaged in the operation of a full-service restaurant known as Andale Cantina, located at 6850 Main Street, Williamsville, New York.

17.     Defendant Amigos Del Pueblo Tres, Inc., at all relevant times, has regulated the employment of all persons employed by it, including but not limited to kitchen and front-of-house workers at Andale Cantina, and has acted directly and indirectly in the company's interest in relation to the employees. Amigos Del Pueblo Tres, Inc. is an employer of its employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     Defendant **Amigos Del Pueblo Cuatro, Inc.** is a company organized under the laws of the State of New York, having its principal office at 4455 Transit Road, Suite 2B, Buffalo, New York 14221.

19.     For most of 2024, Defendant Amigos Del Pueblo Cuatro, Inc. was engaged in the operation of a full-service restaurant known as Andale Tequila Bar, located at 500 Seneca Street in Buffalo, New York.

20.     Defendant Amigos Del Pueblo Cuatro, Inc., at all relevant times, regulated the employment of all persons employed by it, including but not limited to kitchen and front-of-house workers at Andale Tequila Bar, and acted directly and indirectly in the company's interest in relation to the employees. Amigos Del Pueblo Cuatro, Inc. was an employer of its employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

*Individual Defendants*

21.     At all relevant times, Juan Francisco Audelo and Roberto Audelo have together owned and operated the Andale Corporate Defendants.

22.     Collectively, the Andale Corporate Defendants, Juan Francisco Audelo, and Roberto Audelo are the "Andale Employers."

23.     Defendant **Juan Francisco Audelo** has owned 50% of Amigos Del Pueblo Inc. at all relevant times.

24.     Juan Francisco Audelo has owned 50% of Amigos Del Pueblo Dos, Inc. at all relevant times.

25.     Juan Francisco Audelo currently owns 50% of Amigos Del Pueblo Tres, Inc.

26.     Juan Francisco Audelo has owned at least 25% of Amigos Del Pueblo Tres, Inc. at all relevant times.

27.     Juan Francisco Audelo has owned at least 50% of Amigos Del Pueblo Cuatro, Inc. at all relevant times.

28.     Juan Francisco Audelo has been President of Amigos Del Pueblo Inc. at all relevant times.

29.     Juan Francisco Audelo has been President of Amigos Del Pueblo Dos, Inc. at all relevant times.

30.     Juan Francisco Audelo has been President of Amigos Del Pueblo Tres, Inc. at all relevant times.

31.     Juan Francisco Audelo has been President of Amigos Del Pueblo Cuatro, Inc. at all relevant times.

32.     At all times relevant to the Complaint, Juan Francisco Audelo visited each of the four restaurants approximately weekly to oversee the restaurants' operations, including to supervise employees.

33.     At each of the four restaurants, Juan Francisco Audelo (together with Roberto Audelo) has supervised the general managers who in turn directly supervised, hired, fired, and managed the kitchen and front-of-house workers.

34.     Juan Francisco Audelo has personally hired employees at the four restaurants, including dishwashers and cooks.

35.     Juan Francisco Audelo has the power to hire, fire, and discipline employees at the four restaurants.

36.     Juan Francisco Audelo has directly supervised the office manager who compiled hours for all four restaurants' employees for payroll purposes.

37.     Juan Francisco Audelo has directly supervised servers at restaurants including Andale Cantina and Andale Tequila Bar.

38.     Juan Francisco Audelo personally signed payroll checks issued to employees of Amigos Del Pueblo Cuatro, Inc.

39.     Juan Francisco Audelo has had the authority to determine employee pay at the four restaurants.

40.     On information and belief, Juan Francisco Audelo has had authority to sign payroll checks to employees of all four Andale Corporate Defendants.

41.     Juan Francisco Audelo attended meetings with the U.S. Department of Labor's Wage and Hour Division ("Wage and Hour Division") on behalf of himself and the Andale Corporate Defendants in May 2024, July 2024, and March 2025.

42.     At each of those meetings, Juan Francisco Audelo provided information to the Wage and Hour Division about the Andale Employers' operations and employment practices.

43.     Among other information, Juan Francisco Audelo explained to the Wage and Hour Division the Andale Employers' practice of paying certain kitchen employees partly in cash; the operating hours of each of the four restaurants; and information about employees' approximate work hours and the Defendants' pay practices.

44.     After the Andale Employers eventually made certain changes to their pay practices during the Wage and Hour Division's investigation, Juan Francisco Audelo personally explained those changes to employees.

45.     Juan Francisco Audelo has at all relevant times acted directly and indirectly in the interests of each of the four Andale Corporate Defendants in relation to the each of the four

Corporate Defendants' employees and has regulated the terms and conditions of those employees' employment.

46.     Juan Francisco Audelo has at all relevant times been an employer of each of the four Andale Corporate Defendants' employees, within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

47.     Juan Francisco Audelo resides in Cheektowaga, New York, within the jurisdiction of this Court.

48.     Defendant **Roberto Audelo** has owned 50% of Amigos Del Pueblo Inc. at all relevant times.

49.     Roberto Audelo has owned 50% of Amigos Del Pueblo Dos, Inc. at all relevant times.

50.     Roberto Audelo currently owns 50% of Amigos Del Pueblo Tres, Inc.

51.     Roberto Audelo has owned at least 25% of Amigos Del Pueblo Tres, Inc. at all relevant times.

52.     Roberto Audelo has owned 50% of Amigos Del Pueblo Cuatro, Inc. at all relevant times.

53.     Roberto Audelo has been Secretary of Amigos Del Pueblo Inc. at all relevant times.

54.     Roberto Audelo has been Secretary of Amigos Del Pueblo Dos, Inc. at all relevant times.

55.     Roberto Audelo has been Secretary of Amigos Del Pueblo Tres, Inc. at all relevant times.

56.     Roberto Audelo has been Secretary of Amigos Del Pueblo Cuatro, Inc. at all relevant times.

57.     Roberto Audelo has been Treasurer of Amigos Del Pueblo Inc. at all relevant times.

58.     Roberto Audelo has been Treasurer of Amigos Del Pueblo Dos, Inc. at all relevant times.

59.     Roberto Audelo has been Treasurer of Amigos Del Pueblo Tres, Inc. at all relevant times.

60.     Roberto Audelo has been Treasurer of Amigos Del Pueblo Cuatro, Inc. at all relevant times.

61.     Through at least late 2024, Roberto Audelo visited each of the four restaurants approximately weekly to personally oversee the restaurants' operations, including to supervise employees.

62.     At each of the four restaurants, Roberto Audelo (together with Juan Francisco Audelo) has supervised the general managers who in turn directly supervised, hired, fired, and managed the kitchen and front-of-house workers.

63.     Roberto Audelo has directly supervised employees at the four restaurants, including dishwashers and cooks.

64.     Roberto Audelo had the authority to determine employee pay at the four restaurants.

65.     Roberto Audelo personally signed payroll checks to employees of Amigos Del Pueblo Cuatro, Inc.

66.     On information and belief, Roberto Audelo had authority to sign payroll checks to employees of all four of the Andale Corporate Defendants.

67.     In May 2024 and July 2024, Roberto Audelo attended meetings with the Wage and Hour Division and provided information about the Andale Employers' operations and employment practices.

68.     Among other information, Roberto Audelo explained to the Wage and Hour Division the operating hours of each of the four restaurants, employees' approximate work hours, and information regarding Defendants' cash payments to employees and Defendants' recordkeeping practices regarding cash payments.

69.     After the Defendants made certain changes to their pay practices during the Wage and Hour Division's investigation, Roberto Audelo personally explained those changes to employees.

70.     While Roberto Audelo remains an owner of each of the four Andale Corporate Defendants, on information and belief, he stepped away from active involvement in the restaurants' operations on approximately February 28, 2025 but was fully involved prior to that date, as described herein.

71.     Roberto Audelo has at all relevant times acted directly and indirectly in the interests of each of the four Andale Corporate Defendants in relation to each of the four Andale Corporate Defendants' employees and has regulated the terms and conditions of those employees' employment.

72.     Roberto Audelo has at all relevant times been an employer of each of the four Andale Corporate Defendants' employees, within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

73. Roberto Audelo resides in Clarence, New York, within the jurisdiction of this Court.

**THE ANDALE CORPORATE DEFENDANTS ARE AN ENTERPRISE ENGAGED IN COMMERCE**

74. Together, the Andale Corporate Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

75. The Andale Corporate Defendants' business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise, within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

76. In pursuing this common business purpose, each Andale Corporate Defendant has engaged in substantially similar, if not identical, business activities.

77. At all relevant times, each of the four Andale Corporate Defendants engaged in the business of making and serving similar food to members of the public in restaurant settings.

78. At all relevant times, each of the four Andale Corporate Defendants shared the same website.

79. The four Andale Corporate Defendants have used the same employee handbook.

80. The Andale Corporate Defendants' business activities have been performed under common control, *i.e.*, under the shared control of Juan Francisco Audelo and Roberto Audelo.

81. At times, Defendants assigned their employees to work at more than one of the Andale Corporate Defendants' locations in the same week.

82. In each of 2020, 2021, 2022, and 2023, Amigos Del Pueblo Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

83. On information and belief, in 2024 Amigos Del Pueblo Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

84.     In each of 2021, 2022, and 2023, Amigos Del Pueblo Dos, Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

85.     On information and belief, in 2024 Amigos Del Pueblo Dos, Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

86.     In each of 2022 and 2023, Amigos Del Pueblo Tres, Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

87.     On information and belief, in 2024 Amigos Del Pueblo Tres, Inc. had an annual gross volume of sales made or business done in an amount not less than $500,000.

88.     In 2023, the combined annual gross volume of sales made or business done of Amigos Del Pueblo Inc., Amigos Del Pueblo Dos, Inc., and Amigos Del Pueblo Tres, Inc., exceeded $500,000.

89.     In 2024, the combined annual gross volume of sales made or business done of Amigos Del Pueblo Inc., Amigos Del Pueblo Dos, Inc., Amigos Del Pueblo Tres, Inc., and Amigos Del Pueblo Cuatro, Inc. exceeded $500,000.

90.     Each of the Andale Corporate Defendants has had employees handling, selling, and working on goods or materials that have been moved or produced for commerce, such as limes, pineapples, avocados, and other imported produce, as well as cleaning products and electronic equipment.

91.     Therefore, the Andale Corporate Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

## THE ANDALE EMPLOYERS' PROHIBITED PAY PRACTICES

92.     Since at least 2021, the Andale Employers have engaged in several schemes to underpay their employees, and to conceal evidence of the underpayments.

*The Andale Employers Failed to Pay Kitchen Employees Premium Pay for Extensive Overtime Hours, Instead Paying Fixed Weekly Salaries or Day Rates, Without the Required Overtime Premiums*

93.     Through at least early 2024, and in some instances until at least June 2024, the Andale Employers entirely denied their kitchen employees premium pay owed pursuant to the Act for all hours worked over 40 per week.

94.     Defendants' kitchen workers, including cooks and dishwashers, worked for Defendants for approximately 55-60 hours or more per week, and sometimes longer.

95.     Each workday, Defendants' cooks and dishwashers typically worked 9 to 10 hours or more per day, exclusive of any breaks.

96.     Defendants' cooks and dishwashers at each location typically worked six days per week for Defendants.

97.     The Andale Employers knew the number of hours that their kitchen employees worked because Defendants directed them to work those hours.

98.     Defendants paid their kitchen employees fixed weekly salaries that did not change based on the number of hours the employees worked each week, and did not contain any overtime premium for hours worked over 40.

99.     Although at times Defendants lowered or increased kitchen employees' pay proportionally based on the number of days or half-days worked, Defendants' pay records reveal that they disregarded the Act's requirements for overtime pay at all times.

100. For example, during the week ending August 27, 2023, when a dishwasher at Andale Lounge (operated by Amigos Del Pueblo Inc.) worked approximately 45 hours over the course of five days, Defendants did not perform any calculations of the overtime premium due. Instead, Defendants reduced the employee's typical pay for a six-day workweek proportionally by a flat one-sixth amount. Specifically, Defendants multiplied the employee's typical weekly salary net of withholdings and deductions ($700) by five-sixths, to calculate that the employee would be paid $583 (net of withholdings and deductions) for the week ending August 27, 2023 (from $700 in net pay to $583 in net pay).

101. Defendants regularly denied this dishwasher the required overtime premium for hours worked over 40 per week at Andale Lounge.

102. As another example, Defendants regularly denied overtime premiums to a cook at Andale II Mexican Restaurant (operated by Amigos Del Pueblo Dos, Inc.), including but not limited to the weeks ending December 5, 2021 through December 19, 2021, and March 6, 2022 through July 24, 2022. Those weeks, the cook at Andale II worked approximately 55 to 60 hours per week, for which Defendants paid a flat salary of $600 each week, which did not include the required overtime premium for hours worked over 40.

103. Each of those weeks, Defendants' payroll falsely stated that the employee had worked only 40 hours.

104. The Andale Employers subsequently increased this employee's salary, but still did not pay required overtime premiums for the employee's hours worked over 40 each week, through at least early 2024. Instead, Defendants calculated this Andale II cook's pay using a formula derived from the number of days (or half-days) that the employee worked, without any calculation of the overtime premiums due for hours worked over 40.

105.    For example, Defendants calculated the employee's pay the week ending March 19, 2023 based on the cook having worked six days, using a formula of $187.50 per day, net of withholdings and deductions, for a total of $1,125.00 in net pay ($1,380.32 in gross pay). When the same employee worked five and one-half days the week ending June 4, 2023, Defendants used the same formula of $187.50 per day, by multiplying $187.50 times 5.5 to yield $1,031.25 in net pay ($1,234.72 in gross pay).

106.    Similarly, when the same employee worked five days the week ending August 15, 2023, the Andale Employers used the same formula of $187.50 per day, by multiplying $187.50 times 5 to calculate the employee's pay, for $937.50 in net pay. In none of these instances did Defendants calculate or pay the overtime premium owed for hours over 40 each week based on the employee's actual hours worked, as required by the Act.

107.    As another example, Defendants regularly denied overtime premiums to another cook at Andale Cantina (operated by Amigos Del Pueblo Tres, Inc.). As with other kitchen workers, Defendants paid this cook flat amounts based on the number of days the employee worked, without regard to the cook's hours and without any overtime premium.

108.    For example, throughout much of 2023 (including but not limited to the weeks ending September 3, September 10, and September 17), the Andale Employers paid this cook a fixed salary of $898.21 per week, for a six-day workweek at Andale Cantina (approximately $800 net of withholdings). During weeks that this employee worked only five days, Defendants reduced this employee's pay proportionally by multiplying $800 times five-sixths, and paying the employee the amount of gross pay calculated to yield the employee $666.67 net of withholdings ($800*5/6=$666.67). Defendants paid this Andale Cantina cook such a pro-rated day rate the

weeks ending September 24 and October 8, 2023, for example. In none of these instances did Defendants calculate the overtime premium owed for hours over 40 each week.

109.    As another example of Defendants' scheme to deny overtime premiums to kitchen employees, from at least March 2024 through June 2024, Defendants paid a dishwasher at Andale Tequila Bar (operated by Amigos Del Pueblo Cuatro, Inc.) a flat $800 amount each week for approximately 55 weekly hours of work, without paying this dishwasher any overtime premium for hours over 40.

*The Andale Employers Often Failed to Pay Servers and Bartenders*
*the Required Premiums for Overtime Hours*

110.    Through at least early 2024, the Andale Employers regularly denied premium pay — and often any pay at all — to servers and bartenders for hours worked over 40 per week, in violation of the Act.

111.    Defendants generally tracked servers' and bartenders' daily work hours and therefore knew their precise hours worked, and that servers and bartenders regularly worked more than 40 hours each week. But rather than always paying premium pay for hours over 40 as required by the Act, Defendants often paid employees at flat hourly rates, without any overtime premium — or any pay whatsoever (apart from tips) — for hours worked over 40.

112.    For example, the week ending April 16, 2023, a server worked 60.74 hours at Andale Lounge, according to the records of Amigos Del Pueblo Inc. The Andale Employers paid this server $9.45 per hour for the first 40 hours, and nothing for the remaining 20.74 hours (apart from tips).

113.    As another example, the week ending October 9, 2022, a server worked 69.72 hours at Andale II, according to the records of Amigos Del Pueblo Dos, Inc. Defendants paid this server $8.80 per hour for the first 40 hours, and nothing for the remaining 29.72 hours (apart from tips).

114.     As yet another example, the week ending February 4, 2024, a server worked 60.34 hours at Andale Cantina, according to the records of Amigos Del Pueblo Tres, Inc. The Andale Employers paid this worker $10 per hour for the first 40 hours, and nothing for the remaining 20.34 hours (apart from tips).

115.     And the week ending April 21, 2024, a server worked 63.81 hours at Andale Tequila Bar, according to the records of Amigos Del Pueblo Cuatro, Inc. Defendants paid this worker $10 per hour for the first 40 hours, and nothing for the remaining 23.81 hours (apart from tips).

116.     At other times, while certain Defendants paid service employees some amounts for hours worked over 40, those Defendants often did not pay the full overtime premiums required by the Act. At such times, those Defendants used various means to avoid paying the required overtime premiums to service employees, including miscalculating the overtime premiums required by the Act, and shaving some hours from payroll.

117.     For example, the week ending May 7, 2023, a server worked 41.53 hours at Andale Cantina, according to the records of Amigos Del Pueblo Tres, Inc. Defendants paid this server $9.45 hour for the first 40 hours, and took a tip credit of $4.75 per hour toward their pay obligations under New York law. Under the Fair Labor Standards Act, Amigos Del Pueblo Tres, Inc., Juan Francisco Audelo, and Roberto Audelo were required to calculate premium pay for overtime hours for this employee by multiplying the sum of $9.45 plus $4.75 ($14.20) by 150%, for a total of $21.30, from which they were permitted to subtract the $4.75 tip credit. Accordingly, this employee was owed $16.55 per hour (plus tips earned) for the 1.53 overtime hours, but was only paid $14.18 per hour (plus tips) for the overtime hours. Accordingly, Defendants denied this employee the full premium pay due under the Act for overtime hours.

118.	As another example, the week ending July 28, 2024, a server worked 42.67 hours at Andale Tequila Bar, according to the records of Amigos Del Pueblo Cuatro, Inc. Defendants paid this employee $11 per hour for 31.01 hours (while taking a tip credit of $4 per hour toward their pay obligations under New York law), and $19 per hour for the remaining 8.99 non-overtime hours. Under the Fair Labor Standards Act, Amigos Del Pueblo Cuatro, Inc., Juan Francisco Audelo, and Roberto Audelo were required to pay premium pay for overtime hours based on a weighted average of the employee's hourly pay rates of $11 and $19. As part of calculating that average, Defendants were also required to include the tip credit taken under New York law. Rather than following either of these steps, Defendants multiplied the lower $11 per hour rate times 150%, and paid this employee only $16.50 per hour (plus tips) for the 2.67 overtime hours. Accordingly, Defendants denied this employee the full premium pay due under the Act for overtime hours.

119.	As another example, the week ending August 11, 2023, a server worked 50.36 hours at Andale II, according to the records of Amigos Del Pueblo Dos, Inc. Defendants paid this employee $9.45 per hour for 40 hours (while taking a tip credit of $4.75 per hour toward their pay obligations under New York law), and $15 per hour for 7.10 of the remaining hours (labeled on the payroll as "regular" hours, i.e. in a non-tipped capacity). Defendants did not pay this employee anything for the remaining 3.26 hours, and did not pay this employee any overtime premium for any of the hours worked over 40.

120.	The Andale Employers also regularly denied overtime premiums to their office employee who regularly worked approximately 45 hours or more each week. This employee worked approximately 30 hours per week at Defendants' office and approximately 15 hours or more as a server at Andale II, but Defendants did not pay this employee any overtime premiums as required by the Act for hours over 40 each week.

121.     For example, the week ending December 3, 2023, this employee worked 16.83 hours as a server at Andale II according to Defendants' records, in addition to approximately 30 hours in Defendants' office. Defendants paid the employee $9.45 per hour (plus tips) for the 16.83 hours as a sever, and a flat amount of $393.13 for the office work, without any overtime premium for the hours over 40.

122.     The week ending December 17, 2023, the same employee worked 14.88 hours as a server at Andale II according to Defendants' records, in addition to approximately 30 hours in Defendants' office. Defendants paid the employee $9.45 per hour (plus tips) for the 14.88 hours as a server, and the same flat amount of $393.13 for the office work, without any overtime premium for the hours over 40.

*In Violation of the Act's Minimum Wage and Overtime Requirements, the Andale Employers Did Not Pay Any Wages in Some Weeks*

123.     At times relevant to this Complaint, at each of the four locations, the Andale Employers failed to pay any wages at all to certain employees, including servers, bartenders, cooks, and dishwashers, in certain workweeks.

124.     For example, the week ending September 29, 2024, according to Defendants' records, an employee worked 28.89 hours as a server at Andale Tequila, but Defendants did not pay this employee any wages, in violation of the Act's minimum wage requirements.

125.     As another example, the week ending August 18, 2024, according to Defendants' records, an employee worked 56.98 hours as a cook at Andale Tequila, but Defendants did not pay this employee any wages, in violation of the Act's overtime pay requirements.

126.     As another example, in approximately April 2023, the Andale Employers failed to pay any wages to a dishwasher for that employee's first week of work at Andale Lounge.

127. Defendants also occasionally failed to pay various other kitchen employees any wages for their work at Andale Tequila in overtime workweeks, such as in May 2022, October 2022, and October 2023.

128. On information and belief, at times relevant to this Complaint, Defendants failed to pay certain employees any wages for one or more workweeks for work at Andale Cantina.

### THE ANDALE EMPLOYERS' PROHIBITED RECORDKEEPING PRACTICES

129. From at least 2021 through at least early 2024, the Andale Employers failed to make, keep, and preserve adequate and accurate records regarding their employees' wages, hours, and other conditions of employment, as required by the Act and the Act's implementing regulations at 29 C.F.R. Part 516.

130. The Andale Employers did not create or maintain adequate and accurate records of their kitchen employees' daily start and stop times, total daily hours worked, or total weekly hours worked, at all four locations, through at least early 2024.

131. The Andale Employers did not create or maintain adequate and accurate records of other employees' daily start and stop times, total daily hours worked, and total weekly hours worked, including of an office employee, through at least early 2024.

132. Although on information and belief Defendants created records of the daily and weekly hours worked by servers and bartenders since at least 2021, they did not maintain all such records for service employees who worked at Andale Lounge and Andale II for the required three-year period. For example, as of November 2024, Defendants did not maintain records of the total daily and weekly hours worked by service employees at Andale Lounge or Andale II prior to September 2022.

133. The Andale Employers did not create or maintain adequate and accurate records of the amounts of cash wages paid to many of their employees, such as many kitchen employees, at all four locations.

134. The Andale Employers also did not create or maintain adequate and accurate records of other employees' pay, such as the amounts paid to a server at Andale Lounge from approximately April 2023 through September 2023.

135. The Andale Employers did not create or maintain adequate and accurate records reflecting certain employees' names and addresses.

### THE ANDALE EMPLOYERS' VIOLATIONS OF THE ACT WERE WILLFUL

136. Since at least 2021, the Andale Employers, who at times paid certain employees overtime premiums in compliance with the Act, had actual knowledge of the Act's requirements.

137. The Andale Employers have long known that their longstanding pay and recordkeeping practices violate the FLSA.

138. As described herein, the Andale Employers designed certain of their pay and recordkeeping practices to disguise their schemes to violate the Act.

139. For example, at times from at least 2021 through early 2024, the Andale Employers maintained accurate records of servers and bartenders' daily and weekly hours worked, but based these employees' pay on fewer hours, to evade the Act's overtime pay requirements.

140. The Andale Employers knew that the hours information they caused to be sent to Defendants' payroll vendor were often less than the hours actually worked by employees.

## TOLLING AGREEMENTS

141.　On or about March 26, 2025, the Andale Corporate Defendants, Juan Francisco Audelo, and the Secretary, through counsel, knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("2025 Tolling Agreement").

142.　The 2025 Tolling Agreement tolls the applicable statute of limitations from May 12, 2024 until and including August 31, 2025.

143.　Accordingly, the Act's statute of limitations, as applied to the Andale Corporate Defendants and to Juan Francisco Audelo, shall be tolled from May 12, 2024 until and including August 31, 2025, a total of 477 days.

144.　Juan Francisco Audelo signed the 2025 Tolling Agreement on behalf of the Andale Corporate Defendants.

145.　In November 2024, the Andale Corporate Defendants, Juan Francisco Audelo, Roberto Audelo, and the Secretary, through counsel, had previously knowingly and voluntarily entered into an earlier Statute of Limitations Tolling Agreement ("2024 Tolling Agreement").

146.　Defendants signed the 2024 Tolling Agreement on November 11, 2024, and the Secretary's representative signed on November 14, 2024.

147.　The 2024 Tolling Agreement tolled the applicable statute of limitations from May 12, 2024 until and including March 31, 2025.

148.　Accordingly, the Act's statute of limitations, as applied to Roberto Audelo (who did not sign the 2025 Tolling Agreement), shall be tolled from May 12, 2024 until and including March 31, 2025, a total of 324 days.

149.　Roberto Audelo signed the 2024 Tolling Agreement on behalf of the Andale Corporate Defendants.

### FIRST CAUSE OF ACTION
### Violation of Sections 6(a) and 15(a)(2) of the FLSA
### Failure to Pay Minimum Wage

150.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 149 of this Complaint.

151.    The Andale Employers willfully have violated the provisions of Sections 6 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, without compensating certain employees the applicable statutory minimum wage prescribed in Section 6 of the Act for certain weeks.

152.    Therefore, Defendants are liable for unpaid minimum wages and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid minimum wages and prejudgment interest under Section 17 of the Act.

### SECOND CAUSE OF ACTION
### Violation of Sections 7(a) and 15(a)(2) of the FLSA
### Failure to Pay Overtime

153.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 149 of this Complaint.

154.    The Andale Employers willfully have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce, for workweeks longer than forty hours, without compensating certain employees for their overtime hours at rates of at least one and on-half times the regular rates at which they were employed.

155.    Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section of the Act.

**Violation of Sections 11(c) and 15(a)(5) of the FLSA**
**Failure to Make, Keep, and Preserve Adequate and Accurate Records**

156. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 149 of the complaint.

157. The Andale Employers willfully have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests judgment against Defendants providing the following relief:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime and minimum wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime and minimum wage compensation found due Defendants' employees,

and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED:     December 19, 2025
            New York, New York

JONATHAN BERRY
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

BY:    /s/ Jason Glick
       JASON GLICK
       Senior Trial Attorney

U.S. Department of Labor,
*Attorneys for Plaintiff Secretary of Labor*

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3687
(646) 264-3660 (fax)
Glick.Jason.E@dol.gov
NY-SOL-ECF@dol.gov

**EXHIBIT A**

1. [last name unknown], Luis
2. Abdul Furqan, Jalilah
3. Alcantara Rodriguez, Julio
4. Audelo, Arnold A
5. Barney, Marcus
6. Castenada, Erick Daniel
7. Castillon Serrano, Angelica
8. Chavoya Chavez, Hugo
9. Cordoba, Ricarlis Edith
10. Cotter, Kelsi
11. De La Torre Torres, Jose
12. Dolac, Ian
13. Fernandez, Marie
14. Figueroa, Mikey
15. Flores Elias, Marisol
16. Friend, Samuel
17. Gabel, Jenna
18. Garcia, Manuel
19. Gomez, Sarai
20. Gomez Santiz, Victor
21. Guillen, Marvin
22. Gurnari, McKayla
23. Guy-Mary, Valentin
24. Guzman, Luis
25. Guzman, Mariana
26. Guzman Gutierrez, Kevin
27. Jerez Rodriguez, Marxjhony
28. Kausner, Destiny
29. Latorre, Dayana
30. Loor, Vicenth
31. Lopez, Christian
32. Lopez, Jehovani
33. Lopez, Mauricio
34. Lopez Jimenez, Victor
35. Lopez Lopez, Esteban
36. Lopez Mendez, Daniel
37. Lopez Moreno, Roberto
38. Lopez Moreno, Roboam
39. Martinez Ovando, Jeremiah
40. McCoy, Hannah
41. McNamara, Kyle
42. Moreno Torres, Pedro
43. Ordonez Elder, Domingo
44. Ortiz, Christian

45. Ortiz, Jonathan
46. Partida, David
47. Perez Avendano, Jesus
48. Perez Garcia, Gerardo
49. Perez Gomez, Geronimo
50. Perez Lopez, Jose A
51. Perez Lopez, Oscar D
52. Perez Lopez, David
53. Pierce , Haley
54. Portillo, Feliciano
55. Quintero, Alexandra
56. Reynolds, Brianna
57. Rodriguez, Jose A
58. Rodriguez Macias, Aurelio
59. Rojas Angulo, Nohelis
60. Ruiz Hernandez, Aurelio
61. Ruiz Hernandez, Rodulfo
62. Ruvalcaba, David
63. Ruvalcaba, Eli
64. Sahugan, Silvia
65. Sanchez, Eduardo
66. Santiz Perez, Daniel
67. Santiz Perez, David
68. Santiz Perez, Noe
69. Short, Angelece
70. Silvestre Audelo, Maria
71. Sosa, Raisa
72. Suarez Angulo, Victor
73. Tepeyac, David
74. Theodore, Angeline
75. Torres Moreno, Pedro
76. Varela Hernandez, Saul
77. Walsh, Jessica
78. Zepeda, Edgar
79. Zuniga Anaya, Eddy O